IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ROBERT O. IDAHOSA,                    *

    Plaintiff,                        *

vs.                                   *

                                   CASE NO. 4:19-CV-50 (CDL)

RYAN D. McCARTHY, Secretary of        *
the Army, *in his official
capacity*,                            *

    Defendant.                        *

_____

O R D E R

Robert Idahosa, who is proceeding pro se, alleges that his former employer, the United States Department of the Army ("the Government") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*[1]  Now pending before the Court are Idahosa's motion to compel and the Government's motion for summary judgment.  For the following reasons, the motion to compel (ECF No. 17) is denied and the motion for summary judgment (ECF No. 19) is granted.

MOTION TO COMPEL

Idahosa filed a motion to compel the Government to respond to discovery requests, but his motion does not identify or explain

---

[1] Although Idahosa originally alleged claims under the Americans With Disabilities Act, the Court construed his complaint to bring claims under the Rehabilitation Act after a status conference with the parties. Order, Dec. 16, 2019, ECF No. 14.

what those requests are.  The basis for his motion is that he thought the parties had agreed to a forty-five day extension of discovery.  After a status conference with the parties, the Court noted that, if the parties wanted to extend discovery deadlines, they should present the Court with an amended scheduling order. Order, Dec. 16, 2019, ECF No. 14.  The parties discussed such an amended scheduling order but never moved for an extension.  Then, a week after discovery closed, Idahosa served the Government with his discovery requests.  The Government noted that discovery had closed, and Idahosa filed his motion to compel.

Idahosa was aware that he needed to serve his discovery requests prior to the close of discovery because the Court ordered that "[n]o discovery request may be served, without leave of court, unless the due date for the response to the request under the rules occurs prior to the expiration of the discovery period." Rules 16/26 Order 6, July 26, 2019, ECF No. 7.  And the Court's scheduling order states that discovery would expire on February 10, 2020. Scheduling/Discovery Order 2, Aug. 27, 2019, ECF No. 10.  The Court also explained how the parties could request a discovery extension, but Idahosa did not follow that guidance.

Although Idahosa is representing himself, a party's "pro se status in civil litigation generally will not excuse mistakes he makes regarding procedural rules." *Anderson v. Osh Kosh B'Gosh*, 255 F. App'x 345, 348 n.4 (11th Cir. 2006) (per curiam); *see*

*Gardner v. Aloha Ins. Servs.*, 566 F. App'x 903, 906 (11th Cir. 2014) (per curiam) (finding that district court did not abuse discretion in denying pro se plaintiff's motion to compel in part because plaintiff waited until two weeks after discovery deadline); *Jackson v. Hill*, 489 F. App'x 325, 326 (11th Cir. 2012) (per curiam) (affirming denial of pro se plaintiff's motion to compel because it was untimely under local rules). Because Idahosa served his requests late, filed his motion to compel late, and failed to comply with the Court's orders regarding discovery, his motion to compel is denied.

MOTION FOR SUMMARY JUDGMENT

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Idahosa did not respond directly to the Government's statement of material facts, so the Government's fact statements are deemed admitted pursuant to Local Rule 56. The Court must still review the Government's citations to the record to determine whether a genuine fact dispute exists. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Viewed in the light most favorable to Idahosa, the record reveals the following. Idahosa moved to the United States from Nigeria to attend school in 1981. Idahosa Dep. at 19:15-23; 21:1-4, ECF No. 21. In 2009, he began working as an Equal Employment Opportunity ("EEO") specialist for the United States Army at Fort Carson, Colorado. *Id.* at 22:5-6, 17-24.

In 2011, Idahosa was transferred to Fort Benning, Georgia and was promoted to a GS-11 Disability Program Manager/EEO Specialist. *Id.* at 22:7-14; 22:25-23:3; Mot. for Summ. J. Ex. A., Department of Defense, Office of Compl. Investigations, Tr. of Nov. 21, 2014 Fact-Finding Conference 215:12-21 (hereinafter "Conference Tr."), ECF No. 19-3. One of Idahosa's new supervisors at Fort Benning was Ellis Dandy. *Id.* at 12:10-13:15. Dandy told Idahosa that Idahosa would receive a promotion to GS-12 after a year of doing GS-12 level work under Dandy's supervision. Idahosa Dep. at 43:13-44:3.

In December 2012, a GS-12 employee in the EEO office passed away and Dandy divided that employee's responsibilities between himself and the other employees, including Idahosa.  Conference Tr. 238:18-239:9.   Shortly before Dandy retired, he informed Idahosa that the new, incoming supervisor would likely promote Idahosa.   Idahosa Dep. at 33:20-34:13.   Idahosa also spoke with two of his other supervisors, Steuber and Heurter, about a promotion, and they both encouraged him to apply for a promotion and promised that he would likely receive it.  *Id.* at 34:15-24.

After Dandy retired, Elva Shoemaker replaced him in October 2013.  Conference Tr. 12:20-13:6; 227:14-15.  In turn, Shoemaker's old position, which was a GS-12 EEO specialist position, opened up and was advertised in November 2013.  Mot. for Summ. J. Ex B., Army Installation Management Agency Job Posting, ECF No. 19-4. Idahosa applied for the position and was one of five candidates whose materials were provided to an independent panel charged with selecting the person who would be promoted.  Mot. for Summ. J. Ex. C, Merit Promotion Certificate of Eligibles 2, ECF No. 19-5; Mot. for Summ. J. Ex. D, Email to Selection Panel (Dec. 9, 2013), ECF No. 19-6.

Shoemaker provided guidelines to the selection panelists and encouraged them to be unbiased.  Email to Selection Panel (Dec. 9, 2013).  Along those same lines, the panelists used a hiring matrix approved by human resources at Fort Benning to score each

candidate.   Conference Tr. 375:2-15; Mot. for Summ. J. Ex. E, Matrix for Complaints Manager/EEO Specialist, ECF No. 19-7.  This matrix encouraged the panelists to consider experience, training, and past performance appraisals.  *Id.*

The panelists ultimately selected Pamela Allen to fill the open GS-12 position based on the fact that she had more experience than the other candidates, including Idahosa.  Mot. for Summ. J. Ex. F, Notice of Personnel Action, ECF No. 19-8; Conference Tr. at 409:17-410:7; 411:20-23.   Idahosa   filed   his   administrative complaint in August 2014 and received a final decision in May 2017. Mot. for Summ. J. Ex. J, Final Agency Decision, ECF No. 19-12.  He continued to work as a GS-11 employee at the Fort Benning EEO office until February 2018.  Idahosa Dep. 53:2-12.

DISCUSSION

Idahosa brings failure-to-promote claims, retaliation claims, and hostile work environment claims under Title VII, the ADEA, and the Rehabilitation Act.  He also brings a failure-to-accommodate claim under the Rehabilitation Act.  The Court discusses each set of claims in turn.

## I.   Failure to Promote

Idahosa alleges that the Government violated Title VII, the ADEA, and the Rehabilitation Act when it promoted Allen instead of him.  Idahosa does not point to direct evidence of discrimination, so the Court must apply the burden-shifting framework established

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (explaining that *McDonnell Douglas* applies to ADEA claims); *see Webb v. Donley*, 347 F. App'x 443, 445 (11th Cir. 1993) (per curiam) (explaining that *McDonnell Douglas* applies to Rehabilitation Act claims).

To make a prima facie case for a failure-to-promote claim, a plaintiff must show: "(1) that [he] belongs to a protected class; (2) that [he] applied for and was qualified for a promotion; (3) that [he] was rejected despite [his] qualifications; and (4) that other equally or less-qualified employees outside [his] class were promoted." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). "If a plaintiff makes the requisite showing, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the employer meets that burden, then the plaintiff must point to evidence that the alleged reason is merely pretext for discrimination. *Id.*

The Government disputes that Idahosa has established a prima facie case. Assuming for purposes of the present motion that he did, the Court finds that Idahosa's failure to promote claim fails nevertheless because he did not rebut the Government's legitimate, nondiscriminatory reason for promoting Allen instead of him. The Government asserts that Allen was promoted because she had more relevant experience than the other candidates, including Idahosa.

Allen began working as an EEO specialist at Fort Campbell, Kentucky
in March 2008. Mot. for Summ. J. Ex. G, Resume of P. Allen 1, ECF
No. 19-9. At the time of the interview process for the open
position, Allen had five years of experience as a GS-11 EEO
specialist. Idahosa, on the other hand, began working as a GS-11
EEO specialist at Fort Carson, Colorado in January 2009. Mot. for
Summ. J. Ex. H, Resume of R. Idahosa 4, ECF No. 19-10. Idahosa
thus had less experience as an EEO specialist than Allen.

Apart from the two candidates' resumes, the Government also
cites evidence demonstrating that the selection panelists
determined that Allen was better suited for the promotion because
she had more experience. Mot. for Summ. J. Ex. I, Completed Matrix
for Compls. Manager/EEO Specialist, ECF No. 19-11. To make their
decision, the panelists used a hiring matrix that was structured
such that each panelist could evaluate applicants based on a set
of seven criteria. *Id.* The panelists could award applicants
points in each category, and all three panelists awarded Allen
more total points than Idahosa. *Id.* One panelist also explicitly
noted that Allen was more qualified because of her experience.
Conference Tr. at 409:17-410:7; 411:20-23.

Idahosa responds that he was more qualified than Allen because
he had, as a practical matter, been serving as a GS-12 employee
for two years. He points to Dandy's splitting among everyone in
the office, including Idahosa, the responsibilities of a GS-12

employee who unexpectedly passed away in 2012.  But the undisputed evidence shows that Idahosa did not replace the GS-12 employee or cover all of her duties.  Instead, Dandy assigned the duties so that "everybody in the office had a piece of that pie" and Dandy himself actually took on "the lion's share" of the work.  Conf. Tr. 239:4-14.

Moreover, even if Idahosa could establish that he was more qualified than Allen, "in the context of a failure to promote claim, 'a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted.'"  *Barber v. Cellco P'ship*, 808 F. App'x 929, 936 (11th Cir. 2020) (per curiam) (alteration in original) (quoting *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007)); *see Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (stating the same in the context of a Title VII failure-to-promote claim).[2] "Rather, 'he must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over

---

[2] *Barber* involved a failure-to-promote claim under the Americans with Disabilities Act, but "[t]he standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act . . . thus, cases involving the ADA are precedent for those involving the Rehabilitation Act."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

the plaintiff.'"  *Barber*, 803 F. App'x at 936 (quoting *Springer*, 509 F.3d at 1349).

Here, Idahosa has pointed to no evidence establishing that the disparities between his and Allen's qualifications were so significant that no reasonable person could have promoted Allen instead of him.  As such, Idahosa has failed to rebut the Government's legitimate, nondiscriminatory reason for promoting Allen instead of him.  The Government's motion for summary judgment is therefore granted as to Idahosa's failure-to-promote claims under Title VII, the ADEA, and the Rehabilitation Act.

## II.  Retaliation

Idahosa also alleges that the Government retaliated against him by not promoting him and by subjecting him to a hostile work environment because of his prior EEO activity.  "A plaintiff alleging retaliation in violation of Title VII 'must begin by establishing a prima facie case; the plaintiff must show that (1) [he] engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities.'"  *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1244 (11th Cir. 2020) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997)); *see Stone v. Geico Gen. Ins. Co.*, 279 F. App'x 821, 822 (11th Cir. 2008) (per curiam) (explaining that a plaintiff must satisfy the same elements to establish a prima facie case of

ADEA retaliation); *Solloway v. Clayton*, 738 F. App'x 985, 988 (11th Cir. 2018) (per curiam) (explaining that courts in the Eleventh Circuit "assess retaliation claims under the Rehabilitation Act using the same framework as Title VII retaliation claims"). "In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court held that 'a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'" *Knox*, 957 F.3d at 1244 (quoting *Nassar*, 570 U.S. 338, 362 (2013)); *see Jurriaans v. Alabama Coop. Extension Sys.,* 806 F. App'x 753, 757 (11th Cir. 2020) (per curiam) (applying the *Nassar* but-for causation standard to a plaintiff's ADEA retaliation claim).

Here, there is no dispute that Idahosa engaged in protected EEO activity or that he was not promoted. But Idahosa has not established that the panel's decision not to promote him was causally linked to his protected activity. The Government points to evidence that the panel's decision was motivated by the candidates' experience and not their prior EEO activity. Conference Tr. 411:12-23. And Idahosa does not cite any evidence showing that anyone on panel knew about his prior EEO activity. Thus, the undisputed evidence shows that the panelists were not influenced by Idahosa's protected activity.

Idahosa makes conclusory statements that the selection panel did not actually make the hiring decision and that his resume was

not properly reviewed.  But he does not cite to any evidence to support these statements.  "When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial." *Brown v. Crawford,* 906 F.2d 667, 670 (11th Cir. 1990).  "Although [courts] must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts . . . a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Id.*  Idahosa has not pointed to any evidence creating a genuine fact dispute on whether the Government's employment decision was causally linked to his protected activity.

Furthermore, even if he could make a prima facie case, his claim still fails.  As previously explained, the Government articulated a legitimate, nondiscriminatory reason for not promoting Idahosa, and he has not pointed to any evidence showing that this reason was pretext for retaliation.  Accordingly, the Government is entitled to summary judgment on Idahosa's retaliation claims under Title VII, the ADEA, and the Rehabilitation Act.

## III. Hostile Work Environment

Idahosa alleges that the Government subjected him to a hostile work environment because of his gender, national origin, age, disability, and in retaliation for his prior EEO activity.[3] "To establish a hostile work environment claim, a plaintiff must show that: (1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee . . . ; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of either direct liability or vicarious liability." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020); *see Litman v. Sec'y of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017) (per curiam) (explaining that the same five elements are required to establish a prima facie case of a hostile work environment under the ADEA).[4]

---

[3] The Eleventh Circuit recognizes a retaliatory hostile work environment claim as a valid cause of action under Title VII. *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam).

[4] The Eleventh Circuit has never decided whether a hostile work environment cause of action exists under the ADA or the Rehabilitation Act, although the *Litman* panel suggested that such a cause of action exists under the Rehabilitation Act. *See Litman*, 703 F. App'x at 771 (finding no error in the dismissal of the plaintiff's ADEA and Rehabilitation Act hostile work environment claims because the plaintiff did not "allege that any harassment was connected to his age or an alleged disability"). The Court assumes the Eleventh Circuit would analyze a Rehabilitation Act hostile work environment claim under the same framework as Title VII and the ADEA were that court to determine

Idahosa claims that supervisors and co-workers harassed him in a variety of ways. According to Idahosa, he was often subjected to questions and "rude comments about his disability [and] national origin." Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF No. 25 at 19. He contends that Shoemaker, Steuber, and Allen were "mean, intimidating, threatening . . . and used profanity and bullied him." *Id.* at 21. And he claims that he was made fun of because of his accent. *Id.* at 24.

Idahosa's general description of rude behavior directed to him does not rise to the level of being sufficiently hostile to alter the terms and conditions of his employment. "To show that harassment was sufficiently severe or pervasive to alter the terms or conditions of his employment, an employee must prove that his work environment was both subjectively and objectively hostile." *Fernandez*, 961 F.3d at 1153. The Eleventh Circuit has explained that courts should "consider four factors when evaluating whether harassment was objectively hostile: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Id.* (quoting *Mendoza v.*

---

that the cause of action existed. As noted above, assuming the cause of action does exist, Idahosa has failed to meet his burden of establishing a prima facie case.

*Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc)). Idahosa identifies no evidence demonstrating that the alleged harassment satisfies this standard, and for these reasons, the Government's motion for summary judgment is granted as to Idahosa's hostile work environment claims.

## IV. Failure to Accommodate

Idahosa alleges that his supervisors denied his request for an accommodation related to his disability. "To establish a prima facie claim for failure to accommodate, [a plaintiff] must show that (1) [he] is disabled; (2) [he] was a 'qualified individual' at the relevant time, meaning [he] could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [he] was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *Solloway*, 738 F. App'x at 988.

Idahosa says that his supervisors "failed to approve his request for a larger office . . . for his accommodation equipment[] and working space." Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 25 at 17. He contends that he needed "assistive technology in writing and reading text," although he does not assert that the Government failed to provide him with such technology. *Id.* at 19. He cites to several documents indicating that he has disabilities, including poor vision, requiring accommodations. *See* Workforce Recruitment Program Student Information Report, ECF No. 26-3 at 5

(noting that Idahosa requires enlarged text); Letter from A. Smith (April 12, 2007), ECF NO. 26-3 at 7 (noting that Idahosa has "poor visual acuity" and would require "enlarged print due to his disabilities").   Yet, he does not cite to any evidence demonstrating that he actually requested a larger office or that his direct supervisor, Shoemaker, ever received a request for an accommodation from Idahosa.  *See* Conference Tr. 269:1-11.   The Eleventh Circuit has explained "that a plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation."  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam).   Idahosa has not pointed to any evidence creating a genuine fact dispute about his request for a larger office.   As noted above, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."  *Brown,* 906 F.2d at 670.   Here, Idahosa has failed to establish a prima facie failure-to-accommodate case under the Rehabilitation Act, and the Government is entitled to summary judgment on this claim as well.

CONCLUSION

For the foregoing reasons, Idahosa's motion to compel (ECF No. 17) is denied and the Government's motion for summary judgment (ECF No. 19) is granted.

IT IS SO ORDERED, this 18th day of August, 2020.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA